COMMONWEALTH *vs.* RICHARD HENRY SHEEHAN.

Essex.    November 15, 1977. — December 30, 1977.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Insanity. Intoxication. Intent. Practice, Criminal,* Identification of defendant in court room. *Identification.*

A judge at a robbery trial did not err in excluding psychiatric evidence relating to the defendant's incapacity to form the intent to steal where the record did not support the defendant's contention that the exclusion was based on the judge's erroneous interpretation of the law of the Commonwealth as not requiring proof of intent to steal as an element of the crime of robbery and where the judge correctly charged the jury on intent to steal. [758]

At a criminal trial, there was no error in excluding psychiatric testimony concerning the defendant's drug addiction and voluntary intoxication at the time of the crime where such testimony was insufficient to warrant a finding that the defendant was insane or that he lacked the ability to form an intent to steal. [759-761]

At a criminal trial, there was no error in the judge's refusal to instruct the jury to the effect that the defendant should be acquitted if the

---

[6] See note 3, *supra.*

Commonwealth v. Sheehan.

jury had a reasonable doubt whether, because of the degree of his intoxication, he was capable of forming or did form a specific intent to commit armed robbery. [761-762]

At a criminal trial, there was no error in the judge's refusal to instruct the jury as to the Commonwealth's burden of proving the defendant's sanity beyond a reasonable doubt where the evidence was insufficient to raise the issue of insanity. [762]

At the trial of a defendant who had been arrested in the course of his commission of a robbery, a directed verdict of not guilty was not required by the fact that the Commonwealth failed to have any witness directly identify the defendant in court as the person who had committed the robbery where the evidence was sufficient to support a reasonable inference to that effect. [762-763]

INDICTMENT found and returned in the Superior Court on May 22, 1975.

The case was tried before *Adams, J.*

*Edward Berkin (Kristen Lasker* with him) for the defendant.

*Sandor I. Rabkin,* Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant was indicted for robbery while armed and masked and after a jury trial under G. L. c. 278, §§ 33A-33G, was found guilty of robbery[1] and sentenced to a term of imprisonment, with an order that he be afforded treatment as a drug dependent person in accordance with G. L. c. 123, § 48, as amended by St. 1974, c. 827, §§ 18 and 19. He now appeals and argues several assignments of error, most of which are addressed to the judge's rulings excluding certain testimony.

At trial the Commonwealth introduced evidence from which it could have been found that on the evening of March 22, 1975, the defendant, wearing dark clothing and a dark cap, entered a drugstore in Salem. Portions of the defendant's face were covered with adhesive tape. He had a nylon stocking pulled over his forehead and plastic gloves on his hands. He appeared as if he had either been

---

[1] At the close of the Commonwealth's case the judge allowed the defendant's motion for a directed verdict of not guilty as to so much of the indictment as charged robbery while armed and masked. The propriety of that action is not before us.

in an accident or was ill and on medication but in control of his actions. The defendant spoke with a clerk in the drugstore who then led the defendant to the pharmacist. He presented the pharmacist with a bag and demanded that she fill it with class A and class B drugs. Although the defendant had a hunting knife in the back pocket of his trousers, he did not expose the weapon to the pharmacist or the clerk. He did, however, threaten them with harm if they did not obey his instructions. In compliance with the defendant's order the pharmacist went to the safe and placed several bottles of drugs in the bag. When she returned the defendant took the bottles from the bag and questioned her regarding their contents.

During this transaction the defendant paid little or no attention to the customers who were also in the drugstore. One customer who realized that a robbery was occurring slipped out of the drugstore and phoned the police. Two Salem police officers arrived at the drugstore in response to the call. The officers overpowered the defendant, disarmed him and placed him under arrest.

The defendant testified that he had taken drugs for a period of seventeen years. He described in some detail his habit of frequently becoming intoxicated on alcohol, narcotics and other drugs. He also recounted several of his convictions over the previous seventeen years for offenses which he claimed had been committed in order to obtain drugs or money to buy drugs. He also presented testimony indicating that he had been intoxicated every day of the week prior to the robbery. There was testimony that on the day of the robbery the defendant had consumed quantities of methadone, heroin, amphetamine and alcohol. He admitted that he had voluntarily consumed these drugs. He claimed that due to his intoxication on these drugs he had no memory of events occurring between the late afternoon of the day of the robbery and the morning of the next day, and that he had no recall of his participation in the robbery.

The defendant attempted to present testimony by a Dr. Mercer, a psychiatrist experienced in the treatment of

drug dependent persons. After the jury heard Dr. Mercer's qualifications, the Commonwealth requested (and the judge granted) a voir dire examination on the intended substantive testimony. Dr. Mercer then testified that her evaluation of the defendant's mental state was based on two interviews which she had conducted with the defendant on the testimony given by prior witnesses at the trial. On the basis of the information which she had gained therefrom, she concluded that the defendant's consumption of intoxicants on the day of the robbery had caused him to "black out" prior to and during his commission of the robbery. She indicated that by the term "black out" she meant that the defendant had been capable of acting but had retained no memory of his actions. She stated that in her opinion when a person reaches a degree of intoxication which causes him to "black out," his judgment and ability to control his conduct become temporarily impaired. Dr. Mercer also stated that she viewed the defendant's intoxication at the time of the robbery as an expression of his psychological dependence on and addiction to several unspecified drugs. She considered this condition to be a mental disease or defect. She further stated that in her opinion the defendant's consumption of drugs was involuntary because he could not summon the willpower to avoid such conduct due to his inability to tolerate anxiety and to his dependent character.

At the close of the voir dire the defendant's counsel engaged in a colloquy with the judge.[2] In that conversation counsel indicated that he desired to present Dr. Mercer's

---

[2] The relevant portion of the colloquy is as follows:

THE JUDGE: "Well, I think [defense counsel] has everything on the record as to what his proof would be. You wish to show that lack of specific intent — —"

DEFENDANT'S COUNSEL: "I wish to show that he was incapable of forming the specific intent, that he in fact did not form the specific intent, and that he was highly intoxicated as a result of uncontrollable drug dependency and drug addiction; and that in that highly intoxicated

Commonwealth *v.* Sheehan.

testimony in order to show that the defendant's intoxication at the time of the robbery had rendered him incapable of forming a specific intent to steal or of appreciating and controlling his conduct. Counsel also stated that he wished to employ the testimony to show that the defendant's intoxication had been caused by his drug dependency or addiction and that that condition constituted a mental disease or defect. The judge excluded the testimony as offered, and the defendant excepted, discontinued the examination of Dr. Mercer, and rested his case.

1. The defendant first contends that the judge's exclusion of that portion of Dr. Mercer's testimony which related to the defendant's capacity to form the intent to steal was based on the judge's erroneous interpretation of the law of the Commonwealth as not requiring proof of intent to steal as an element of the crime of robbery. This claim is based on a statement made by the judge in the course of a wide ranging discussion with counsel outside the presence of the jury. As we read that discussion, the judge stated that the lack of specific intent cannot be based on a defendant's claim of incapacity to form such an intent by reason of voluntary intoxication. In any event, no harm resulted to the defendant, as the discussion was not heard by the jury and the judge charged them correctly on the question of intent to steal.[3]

| | |
|---|---|
| | state he was unable to conform his behavior to the requirements of law." |
| THE JUDGE: | "And that as a result of that — anything further?" |
| DEFENDANT'S COUNSEL: | "Well, I would say that, just that his drug addiction and drug dependency were a mental disease and defect." |
| THE JUDGE: | "All right. I think you have stated all that. I am going to exclude that and note your exception. Now, what does that leave with respect to Dr. Mercer?" |
| DEFENDANT'S COUNSEL: | "Well, I don't know if it leaves anything, your Honor. I mean, that is what I wanted her to testify to. That is what I believe we have a right to introduce in this case." |

[3] The only exception to the judge's charge on the subject of intent is discussed in part 3, *infra.*

2. The defendant's next two assignments of error are based on his exception to the exclusion of portions of the psychiatric testimony proffered through Dr. Mercer. In the first assignment the defendant claims that the judge erred in excluding that testimony, as it was offered to show that the defendant had been involuntarily intoxicated, had suffered from a mental disease or defect, and had not been legally sane at the time of the offense.[4] In the second the defendant claims that the judge erred in excluding that testimony because it was offered to show that at the time of the offense the defendant neither possessed nor was capable of possessing an intent to steal. As both assignments arise from the same exception and as the issues raised by both are closely related on the evidence in this case, we address them jointly.

The criminality of an act is excused by reason of insanity only if at the time of the offense the defendant suffered from a mental disease or defect that deprived him of substantial capacity either to appreciate the criminality of his conduct or conform his conduct to the requirements of the law. *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967). See *Commonwealth* v. *Laliberty,* 373 Mass. 238, 241 (1977). The purpose of the defense of insanity in this jurisdiction is to maintain the general and specific deterrent effect of criminal penalties for wrongful conduct, subject only to a recognition of the injustice of punishing those lacking the capacity to appreciate or control their criminal behavior. *Commonwealth* v. *McHoul, supra* at 555.

The psychiatric testimony proffered in this case was not

---

[4] We view the defendant's contention that his intoxication had been involuntary solely as an aspect of his defense of insanity (i.e., that his intoxication was compelled by a pathological condition which overcame his free will). Traditionally, the defense of involuntary intoxication may only be raised by one who was forced by another to consume intoxicants or was secretly administered intoxicants. See *Commonwealth* v. *McAlister,* 365 Mass. 454, 463-464 (1974), cert. denied, 419 U. S. 1115 (1975). This defense is unavailable to one who makes his own determination to consume intoxicants, regardless of the motivation. *Commonwealth* v. *Gilbert,* 165 Mass. 45, 52-53, 57 (1895).

relevant to the establishment of the defense of insanity, as the testimony offered, when considered with the other evidence adduced at trial, would not have warranted a finding by the jury that the defendant had suffered a mental disease or defect as recognized under the law of this Commonwealth. Dr. Mercer attributed the defendant's temporary lack of capacity at the time of the offense directly to his self-induced intoxication. Even if one were to accept the characterization of the defendant's consumption of intoxicants as an expression of his underlying mental condition, the proffered testimony was insufficient to establish that any such underlying condition would constitute a mental disease or defect which, in and of itself, could impair the defendant's capacity. Compare *Commonwealth* v. *McGrath,* 358 Mass. 314, 320 (1970); *Commonwealth* v. *Costa,* 360 Mass. 177, 186 (1971).

Dr. Mercer's stated view that the defendant's drug dependence or addiction was a mental disease or defect was insufficient for that purpose. Despite her view, drug dependence or addiction, in itself, does not constitute the type of incapacitating mental disease or defect which, under the McHoul standard, excuses a defendant's criminal conduct. *United States* v. *Freeman,* 357 F. 2d 606, 625 (2d Cir. 1966).[5] Apart from her testimony as to the defendant's addiction and dependence, the only testimony offered by Dr. Mercer with regard to the defendant's underlying mental condition was her statement that she considered the defendant to be incapable of summoning the willpower to avoid his consumption of intoxicants due to certain weaknesses in his personality and character. She did not opine that these weaknesses rose to the level of a mental disease or defect. Without such an opinion her testimony would have been insufficient to present a jury question as to whether those weaknesses amounted to a mental disease or defect. Compare *Commonwealth* v. *Mazza,* 366 Mass.

---

[5] Cited with approval in *Commonwealth* v. *McHoul, supra* at 549-550, in relation to its statement of the general purpose of the insanity defense.

30, 32-33 (1974); *Commonwealth* v. *McInerney,* 373 Mass. 136, 151-152 (1977).

As there was no testimony offered of a mental disease or defect sufficient to excuse the defendant's conduct in this case, the only remaining consideration with regard to the proffered testimony is whether it was relevant to establish the effect of the defendant's intoxication on his ability to form an intent to steal at the time of the offense. We find no error in the exclusion of the testimony as offered for that purpose.

Absence of the specific intent required in various criminal offenses may not be found solely because of the defendant's intoxication at the time of the offense.[6] *Commonwealth* v. *Stewart,* 359 Mass. 671, 679 (1971), vacated as to death penalty, 408 U. S. 845 (1972). See also *Commonwealth* v. *Malone,* 114 Mass. 295, 298 (1873); *Commonwealth* v. *Gleason,* 262 Mass. 185, 191 (1928); *Commonwealth* v. *Taylor,* 263 Mass. 356, 361-363 (1928); *Commonwealth* v. *Farrell,* 322 Mass. 606, 621 (1948); *Commonwealth* v. *LePage,* 352 Mass. 403, 419 (1967). This results from a logical application of the doctrine that "[a man] cannot avail himself of his intoxication to exempt him from any legal responsibility, which would attach to him, if sober." *Commonwealth* v. *Hawkins,* 3 Gray 463, 466 (1855).

3. The defendant next assigns as error the judge's refusal to instruct the jury in accordance with three requested instructions which he submitted at the close of the evidence. He first complains of the judge's refusal to instruct the jury, in effect, that if they should have a rea-

---

[6] Evidence of intoxication may serve to reduce a finding of murder in the first degree to murder in the second degree due to the consideration that a defendant's malice aforethought may not have been the result of deliberate premeditation, in light of the effect that intoxication may have on his ability to reason. *Commonwealth* v. *Parsons,* 195 Mass. 560, 570 (1907). *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617-618 (1949). See *Commonwealth* v. *Mazza, supra.* Deliberate premeditation is not a required element of the offense of robbery. See G. L. c. 265, § 17. All that is required as to the proof of specific intent in the crime of robbery is an inference, based on the defendant's conduct, that he intended to steal the property wrongfully taken.

sonable doubt whether, because of the degree of his in-
toxication the defendant's mind was capable of forming or
did form a specific intent to commit armed robbery, they
should acquit him. This requested instruction was not con-
sistent with the law of the Commonwealth, and the refusal
to give it was proper. *Commonwealth* v. *Farrell, supra.
Commonwealth* v. *LePage, supra. Commonwealth* v. *Stew-
art, supra.*[7]

The defendant also challenges the judge's refusal to
instruct the jury both as to the Commonwealth's burden
of proving the defendant's sanity beyond a reasonable
doubt and as to the propriety of returning a verdict of not
guilty by reason of insanity on the evidence in this case.
Since we have held that the evidence, together with the
proffered psychiatric testimony, was insufficient to raise an
issue of insanity in this case, we find no error in the judge's
refusal to give the requested instructions. Instructions on
insanity are inappropriate when the issue of the defend-
ant's sanity has not been raised in the evidence. See
*Commonwealth* v. *McInerney, supra.* The judge was not
required to charge the jury on a hypothesis which was not
supported by the evidence. *Commonwealth* v. *Kleciak,*
350 Mass. 679, 691-692 (1966). *Commonwealth* v. *Costa,
supra* at 184.

4. The defendant lastly assigns as error the judge's re-
fusal to grant a motion for a directed verdict of not guilty,
based on the contention that the Commonwealth failed to
establish that the defendant was the individual who had
committed the robbery. This motion was premised on the
fact that the Commonwealth failed in its case in chief to
have any witness directly identify the defendant in court
as the man who had committed the robbery.

In reviewing the denial of a motion for a directed verdict
we consider the evidence in the light most favorable to
the Commonwealth. *Commonwealth* v. *Gallagher,* 4 Mass.

---

[7] Contrast *Commonwealth* v. *White, supra,* relative to the propriety
of a requested instruction regarding the specific intent to steal in the
offense of robbery when the factual circumstances indicate a claim of
right by the defendant to the taken property.

Commonwealth *v.* Sheehan.

App. Ct. 661, 662 (1976). *Commonwealth* v. *Gray, ante,* 296, 298 (1977). When viewed in this context, we consider that the evidence before the jury was sufficient to support a reasonable inference that the defendant was the individual described by the witnesses as the robber.[8] See *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts,* 393 U. S. 1058 (1969). There was evidence that the man who had committed the robbery in this case had been arrested during the course of his commission of the offense. In his direct testimony the arresting officer referred to the man he had arrested in the drugstore and subsequently booked as "Mr. Sheehan."[9] The jury could reasonably have inferred from this evidence that the "Mr. Sheehan" who had been arrested in the drugstore on March 22, 1975, was the same "Mr. Sheehan" who was on trial for the robbery which occurred in the drugstore on the same date.

*Judgment affirmed.*

---

[8] Notwithstanding our holding based on the facts of this case, we consider that the preferable practice is for the prosecution to have the record show specifically that the person in the dock is the one referred to by the identifying witness.

[9] During her cross-examination of the Commonwealth's witnesses the defendant's attorney likewise referred to the man who committed the robbery in the drugstore as "Mr. Sheehan."