## COMMONWEALTH vs. JOHN F. LORETTA.

Middlesex.   April 7, 1982. — July 20, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Judge.   Constitutional Law,* Recall of retired judges.   *Public Officer. Practice, Criminal,* Instructions to jury.   *Intoxication.   Intent.*

On an appeal of criminal convictions raising the issue of the legality of the defendant's confinement because of his commitment by a retired judge sitting under G. L. c. 32, § 65G, the recall statute, this court would not disqualify itself on the basis of the defendant's allegation that the Justices had "a direct and substantial interest, relationship, bias or prejudice in the outcome of the matter." [796-797]

The Attorney General, by an action in the nature of quo warranto, rather than a criminal defendant seeking discharge from confinement, has standing to test the constitutionality of G. L. c. 32, § 65G, permitting recall of judges after their retirement. [797-798]

In the context of a judge's entire charge at a criminal trial, the judge's use of the expression "it is reasonable and logical to infer that a person intended to do all the natural and probable consequences of his conduct," in a fashion alleged to have shifted the burden of proof to the defendant, created no substantial risk of a miscarriage of justice. [798-799]

In the circumstances, this court declined to rule that intoxication caused by voluntary consumption of alcohol by itself warranted a finding of absence of a specific criminal intent. [799-800]

INDICTMENTS found and returned in the Superior Court Department on August 11, 1978.

The cases were tried before *Tamburello,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Richard J. Hayes* for the defendant.

*Kevin J. Ross,* Legal Assistant to the District Attorney, for the Commonwealth.

*Francis X. Bellotti,* Attorney General, *Stephen R. Delinsky, Barbara A. H. Smith & Paula J. DeGiacomo,* Assistant

Attorneys General, for the Attorney General, amicus curiae, submitted a brief.

NOLAN, J. A jury found the defendant guilty of the crimes of armed assault with intent to murder (G. L. c. 265, § 18), kidnapping (G. L. c. 265, § 26), and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A). He was found not guilty of armed robbery. He appealed his convictions to the Appeals Court and we transferred the case to this court on our own motion. In his appeal, he presses four issues: (1) a motion presented at oral argument seeking the en banc recusal of this court because of our interest in the statute permitting retired judges to serve on recall; (2) the illegality of the defendant's confinement because of his commitment by a retired judge sitting under G. L. c. 32, § 65G, which permits recall of judges after their retirement; (3) the refusal of the trial judge to instruct the jury on the effect of intoxication from alcohol or drugs on the specific intent required for some of the crimes charged; (4) the use of "natural and probable consequence" language in the charge in such fashion as to shift the burden of proof to the defendant. After a brief narration of the facts, we shall treat these issues singillatim. We see no merit in the defendant's position on any of these issues and, accordingly, we affirm the convictions.

The jury were warranted in concluding that the defendant had been drinking at a barroom in Marlborough throughout the evening of July 24, 1978. Joseph Garrahan, the victim, arrived at this barroom on that night between 10:30 P.M. and 11 P.M. The defendant and Garrahan were strangers to each other until closing time, around 2 A.M. on July 25, 1978, when they encountered each other near Garrahan's van which was parked near the barroom. Garrahan and one Oullette, a friend of the defendant, became involved in a fight which was promptly mediated by a policeman. After the fight, the defendant entered Garrahan's van, drew a knife which he thrusted menacingly near Garrahan's throat and ordered him to drive the van. Garrahan acceded to the demand but was told to pull over before he had driven very

far. Before the van came to a stop, the defendant stabbed Garrahan repeatedly on the chin, ear, hand, and under the arm. The van came to a stop when it rolled into a utility pole. Garrahan recovered sufficiently to negotiate his van away from the pole and, to draw attention, he deliberately drove into a police cruiser. The defendant fled from the passenger side of the van and eluded a chase by a police officer who recognized him. Garrahan was taken to the hospital where he received multiple stitches. His condition on admission was described as poor because of a significant loss of blood. The defendant was arrested at his home a short time after his flight from the van. The defendant testified to having drunk twenty-three shots of whiskey during the evening hours of July 24 and 25, 1978. He insisted that he was not drunk, that he was aware of all that was happening around him and that he was able to walk and talk without impediment.

1. *Motion to disqualify.* The defendant filed a motion at oral argument asking the members of this court to disqualify themselves from deciding this case because of what he describes as "a direct and substantial interest, relationship, bias or prejudice in the outcome of the matter." This allegation has, as a partial underpinning, the recognition of the workload carried at present by all the retired and recalled judges in all the courts of the Commonwealth except the Supreme Judicial Court. There are now no retired Justices sitting on the Supreme Judicial Court; the statute governing the recall of Justices to this court differs from the statutes governing recall of judges to all the other courts. See G. L. c. 32, § 65E. In the case of the Supreme Judicial Court, a retired Justice may assume full bench duties "only to fill a temporary vacancy, including temporary disability." G. L. c. 211, § 24 (*a*), inserted by St. 1978, c. 478, § 103. We decline to disqualify ourselves primarily because our relationship is too attenuated to bring us even to the threshold of a conflict of interest. See S.J.C. Rule 3:09, Cannon 3(C), as appearing in 382 Mass. 811 (1981) (formerly S.J.C. Rule 3:25). Moreover, even if our interest were personal, direct and

substantial, the defendant has a right to have appellate review of his case. There is no other court in which his case can be decided. To suggest that a special appellate court might be appointed to hear just this case misses the mark, because the Supreme Judicial Court has no power to create such a court and the Legislature has not given any indication of a predisposition to take this unusual step. Although we see no need to invoke the ancient Rule of Necessity because the subject matter does not directly implicate our personal interest, we would have no difficulty in acting under such rule which not merely permits but requires judges to decide cases within their jurisdiction if the case cannot be decided otherwise. See *United States* v. *Will*, 449 U.S. 200, 213-216 (1980), and cases and authorities cited therein.

2. *Illegality of confinement based on commitment by judge sitting under recall.* The judge presiding at the defendant's jury trial was over seventy years of age at the time of trial, and he was sitting by virtue of G. L. c. 32, § 65G (recall statute). The defendant argues at length the unconstitutionality of the recall statute because (the argument continues) it flies in the face of art. 98 of the Amendments to the Massachusetts Constitution, approved by referendum on November 7, 1972, amending Part II, c. 3, art. 1, of the Massachusetts Constitution, which provides that "upon attaining seventy years of age [said] judges shall be retired." We do not reach the constitutional claim because, among other reasons, the defendant has no standing to raise it.[1] If a case can be decided on nonconstitutional grounds, the better course is to decide it by not reaching the constitutional issue. See *Commonwealth* v. *Knowlton*, 378 Mass. 479, 483 n.4 (1979), and cases cited therein. The Attorney General is the proper party to test the constitutionality of the recall statute in an information in the nature of quo warranto. See G. L. c. 249, § 9, as appearing in St. 1973, c. 1114, § 292. A defendant's disability and lack of standing has

---

[1] We note that the Justices of this court spoke approvingly of the recall statute in *Opinion of the Justices*, 362 Mass. 895 (1972).

been equated with a prohibition against a collateral attack on a public officer's right and title to hold office and an acknowledgement of the Attorney General's largely exclusive role in bringing a direct proceeding to test the officer's right. See *Boston Edison Co.* v. *Boston Redevelopment Auth.,* 374 Mass. 37, 74-75 (1977). This principle makes good sense because "[b]y requiring the Attorney General to institute direct proceedings, the Legislature has sought to protect the rights of members of the public who, by necessity, are compelled to do business with an officer who is exercising the duties and privileges of an office under color of right, and at the same time protect public officials from a multiplicity of lawsuits based on individual interests rather than on the public interest." *Boston Edison Co., supra* at 75.

This rule was invoked in *Sheehan's Case,* 122 Mass. 445, 446 (1877), in which a defendant was sentenced by a judge who, arguably, was holding his judicial office wrongfully, since he was occupying a seat in the House of Representatives concurrently with his judgeship. In that case, this court held, as we hold today, that the petitioner (criminal defendant seeking discharge from his commitment) had no standing. *Id.* at 448-449.

While the standing obstacle is sufficient by itself to defeat the defendant's argument, it is interesting to note that the defendant failed to raise the issue until two years after he was sentenced. He also can point to no prejudice from the participation of the recalled judge.

3. *Jury instructions.* The defendant charges the judge with shifting the burden of proof in his jury instructions because the judge said, "And as a general rule, it is reasonable and logical to infer that a person intended to do all the natural and probable consequences of his conduct." It is true that similar language was identified as offensive to due process because of its tendency to relieve the government of its burden of proof beyond a reasonable doubt in *Sandstrom* v. *Montana,* 442 U.S. 510, 517, 524 (1979). It is equally true that we should examine the jury instructions as a whole to determine whether they reveal a flaw which might mis-

lead the jury to transfer improperly the burden of proof. *Commonwealth* v. *Collins,* 374 Mass. 596, 599 (1978). The charge spans thirty pages of transcript. In at least eight instances in the instructions, the judge stressed that the burden was on the Commonwealth to prove all elements of the crimes charged beyond a reasonable doubt. In fact, shortly after the sentence referring to natural and probable consequences quoted above, the judge emphasized unambiguously the Commonwealth's exclusive burden of proof. The judge's instructions on the presumption of innocence were equally clear and correct.

The defendant did not object to the language on which he now rests his appeal and, therefore, our standard of review will require us to find a substantial risk of a miscarriage of justice before granting the defendant relief. *Commonwealth* v. *Williams,* 378 Mass. 242, 243, 245 (1979). However, even if he had objected, the charge as a whole was free of any reversible error. *Commonwealth* v. *Fluker,* 377 Mass. 123, 130 (1979). Compare and contrast *Commonwealth* v. *Palmer, ante* 35 (1982); *Commonwealth* v. *Repoza,* 382 Mass. 119, 132-134 (1980).

4. *Effect of intoxication on defendant's capacity to form specific intent.* The defendant claims error in the judge's refusal to instruct the jury that his voluntary use of liquor leading to his intoxication might be considered by them on the issue whether he had the mental capacity to form the specific intent required for the crimes charged.

The jurisprudence of Massachusetts has given very limited recognition to the effect of voluntary intoxication caused by liquor or drugs on criminal responsibility. For many years, we have permitted juries to consider intoxication as it bears on a defendant's capacity to accomplish deliberate premeditation when this element is required for a conviction of murder in the first degree. *Commonwealth* v. *Johnson,* 374 Mass. 453, 462-463 (1978), and cases cited therein. The defendant argues with more than a soupçon of logic that voluntary intoxication is as relevant to a defendant's capacity to form a specific criminal intent as it is to a defend-

ant's capacity to premeditate deliberately. See J.R. Nolan, Criminal Law, § 645, at 468 (1976). However, while acknowledging that the law in most other jurisdictions is to the contrary, we have pointedly declined to rule that voluntary consumption of alcohol and drugs by itself warrants a finding of absence of a specific criminal intent. *Commonwealth* v. *Sheehan,* 376 Mass. 765, 774 (1978).

This is not the appropriate case for us to depart from our rule (whether we shall do so in the future must await another day) because the evidence tending toward proof of the defendant's inability to form the required specific intent is lacking here. There is no expert testimony as to the effect of the defendant's consumption of alcohol on his mental capacity. It is true that the defendant testified that he had consumed twenty-three drinks of whiskey. However, he also testified that he was not drunk and that he did not "feel the drinks." A jury should not be asked to determine on this evidence whether the defendant was so intoxicated that he could not form the required specific intent.

*Judgments affirmed.*