**STATE**

v.

**Albert R. FOURNIER.**

**No. 79–156–C.A.**

Supreme Court of Rhode Island.

Aug. 5, 1982.

Dennis, J. Roberts, II, Atty. Gen., Joseph P. Ippolito, Jr., Sp. Asst. Atty. Gen., for plaintiff.

William Reilly, Public Defender, Janice M. Weisfeld, Merlyn O'Keefe, Asst. Public Defenders, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Albert R. Fournier, was indicted by a grand jury on October 11, 1977, for committing the following offenses on July 26, 1977:

1. Carrying a pistol without a license in violation of G.L.1956 (1969 Reenactment) § 11–47–8, as amended by P.L. 1975, ch. 278, § 1.

2. Possession of a pistol after conviction of a crime of violence in violation of G.L.1956 (1969 Reenactment) § 11–47–5.

3. Assault with intent to murder in violation of G.L.1956 (1969 Reenactment) § 11–5–1.

4. Assault with intent to rob in violation of G.L.1956 (1969 Reenactment) § 11–5–1.

5. Assault with intent to commit murder while armed in violation of G.L.1956 (1969 Reenactment) § 11–47–3, as amended by P.L.1977, ch. 16, § 1.

Prior to trial, defendant's request to sever count 2 was granted. In addition, prior to the jury deliberations, defendant's motion to merge count 5 with count 3 was granted. The jury subsequently found defendant guilty of the remaining charges. The defendant now appeals from the judgments of conviction. We affirm.

On July 26, 1977, the victim, Albert C. Pello, was working as the manager at the now-defunct Abbott Park Hotel in Providence. At approximately 7 a. m. on that day, a customer requested a package of Pall Mall cigarettes, which the victim went to the bar to obtain. When the victim returned with the cigarettes, the customer pointed a gun at him and demanded money. The victim refused, whereupon the assailant shot him twice in the head and then fled. The victim remained conscious and was able to call the police to request emergency aid. A few minutes later, an officer of the Providence police department arrived on the scene and the victim gave him the following description of the suspect. According to the victim, his assailant was a white male, at least six feet tall with black hair and a sallow complexion, and he appeared to be in his forties. In addition, he was wearing dark clothing and was carrying a green garment under his arm. The description was immediately communicated over the police radio. Shortly thereafter, a detective with the department took over the investigation. His check of the area produced another eyewitness who had seen a man running from the Abbott Park Hotel around the time of the incident. The description given by the second eyewitness basically conformed to that given by the victim except that the second eyewitness stated that the suspect had some gray in his hair. After receiving this information, the detective issued a second broadcast.

Upon concluding the investigation at the scene, the detective, together with a police sergeant, began a search for the assailant throughout the city. Several hours later, the two police officers drove their cruiser

into Burnside Park to get a better look at several people they had seen from the street. The police pulled up directly in front of three men sitting on a park bench. Two of the men appeared to be in their early twenties. The other man, who appeared to be in his forties, fit the description of the suspect.

The officers approached the three men and requested their names and identifications. The suspect identified himself as Robert Liget and stated that he had no identifying papers. He then was placed against the police car. While the suspect was in this position, one of the officers saw a jacket on the bench and asked the suspect whether the jacket belonged to him. When the suspect responded in the negative, the officer picked up the jacket and found a pistol underneath it. Thereafter, all three men were brought to the police station. At the station, the suspect was searched and several bullets were found on him, as well as a pack of Pall Mall cigarettes and $24.57 in cash. Subsequently, the two uniformed police officers brought the suspect to the victim's hospital room. When the victim saw the suspect, he immediately uttered, "That is the man that shot me. That is the son of a bitch."

Ballistics additionally established that the bullets from the seized gun matched the bullets removed from the victim. At the trial, the hospital room identification was not admitted, but the victim's courtroom identification of the suspect was allowed.

On appeal, defendant challenges several rulings made by the trial justice. The first question presented is whether the police officers had sufficient information to detain the suspect without a warrant. The defendant contends that the descriptions of the assailant were not sufficiently precise to support the warrantless arrest, and that, his detention was therefore in violation of the Fourth and Fourteenth Amendments.

 We disagree. The descriptions given to the police officers were specific and accurate. Therefore, the facts and circumstances within the police officers' knowledge were sufficient to allow them reason-

ably to rely thereon and reasonably to believe that defendant had committed or was committing a felony. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

 The defendant's second contention is that the show-up in which the two police officers presented defendant in handcuffs before the victim in the hospital room was in violation of the Fourteenth Amendment. Specifically, defendant argues that the confrontation under those circumstances was so suggestive as to violate due process. We think not. We first note that the pretrial identification was not introduced at trial. Moreover, a review of the record convinces us that the in-court identification was based completely upon the victim's observations of his assailant at the time of the assault and was not at all influenced by the show-up. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969).

 The defendant also claims that the trial justice exhibited bias in favor of the state in his conduct of the trial. Specifically, defendant asserts that it was error for the trial justice to frame the same question twice for the prosecutor and to exclude a question raised by defense counsel that was not objected to by counsel for the state. We disagree. The asking of questions of a witness by a justice is proper in the furtherance of justice. *State v. Dionne*, R.I., 442 A.2d 876, 885 (1982). A reading of the record demonstrates that the questions as submitted by the trial justice neither prejudiced defendant's case nor created the appearance that the justice was favoring the prosecution. As to defendant's second assertion, we note that a trial justice may exclude objectionable evidence on his own motion without waiting for formal objection. *Id.*

 The defendant also claims that because his jacket was outside the area within his immediate control, the warrantless search of that article was improper, citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct.

2034, 23 L.Ed.2d 685 (1969). We find, however, that *Chimel* is not applicable. In the present case, the jacket had been abandoned because defendant had disclaimed ownership of it. Under such circumstances, defendant has no standing to challenge the search. *See State v. Monteiro*, 108 R.I. 569, 277 A.2d 739 (1971); *cf. State v. Bennett*, R.I., 430 A.2d 424 (1981) (no voluntary abandonment of seized article existed when unlawful police conduct caused defendant to drop object).

■ The defendant also asserts that his constitutional right to protection from double jeopardy was violated when he was convicted of both assault with intent to rob and assault with intent to murder. Under the Fifth and Fourteenth Amendments, a defendant has a right to be free from the risk of being punished twice for the same offense. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Ballard*, R.I., 439 A.2d 1375 (1982); *State ex rel Scott v. Berberian*, 109 R.I. 309, 284 A.2d 590 (1971). In *Blockburger*, the United States Supreme Court set forth the following standard to determine whether the potential for double jeopardy exists.

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

■ We are of the opinion that in the instant case each offense requires proof of an element that the other does not. Assault with intent to rob requires proof that a defendant unlawfully attempted to take from the person of another goods or money of any value by violence or by putting him in fear. *See State v. Pope*, R.I., 414 A.2d 781 (1980). Therefore, defendant committed assault with intent to rob when he pointed the gun at the victim and demanded money. In order to establish assault with intent to murder, however, it is neces-

sary to prove that the defendant had a specific intent to kill the victim. *State v. Gagne*, 362 A.2d 166 (Me.1976). This intent may be inferred from the firing of a deadly weapon at a vital part of the victim's body. *James v. State*, 31 Md.App. 666, 358 A.2d 595 (1976). Thus, in the instant case, defendant committed assault with intent to murder when he shot the victim twice in the head. In light of the foregoing, therefore, defendant was not placed in double jeopardy when he was convicted for both crimes.

After considering the defendant's remaining allegations of error, we find that they are also devoid of merit.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgments of conviction are affirmed and the case is remanded to the Superior Court.