### COMMONWEALTH *vs.* ALBERT HENSON, JR.

Plymouth. January 7, 1985. — April 18, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Evidence*, Cross-examination, Bias. *Witness*, Bias. *Assault with Intent to Murder. Intoxication. Intent.*

At the trial of indictments, the judge had no discretion to foreclose the defendant's attempt to cross-examine a certain witness concerning criminal charges pending against her in order to show her bias in favor of the prosecution, where the charges, which were pending in the same county, had arisen after the witness had given a tape recorded statement to an assistant district attorney and where her trial testimony was more detrimental to the defendant than was her tape recorded statement. [586-590]

For a trier of fact to find a defendant guilty of assault with intent to murder, the Commonwealth must prove, in addition to malice, that, at the time of the crime, the defendant had a specific intent to kill. [590-592]

This court announced the rule that where proof of a crime requires a specific criminal intent, and there is evidence tending to show that the defendant was under the influence of alcohol or some other drug at the time of the crime, the judge, if requested, should instruct the jury that they may consider evidence of the defendant's intoxication at the time of the crime in deciding whether the prosecution has proved that specific intent beyond a reasonable doubt. [592-594] HENNESSEY, C.J., concurring.

INDICTMENTS found and returned in the Superior Court Department on August 26, 1981.

The cases were tried before *William H. Carey*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*John P. Corbett*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. In his appeal from convictions of assault with intent to murder, while armed with a dangerous weapon (G. L.

c. 265, § 18), and assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), the defendant challenges rulings denying him the right to impeach certain witnesses for bias by showing that criminal charges were pending against them. We agree that as to one significant witness cross-examination was improperly and prejudicially barred and that there must be a new trial. We deal further with two issues that will arise at any retrial of the indictment charging assault with intent to murder: the nature of the intent the Commonwealth must prove and the extent to which the jury should consider a defendant's intoxication from alcohol or other drug in deciding whether the defendant had the requisite criminal intent.

We recite facts the jury could have found, leaving certain facts for development in the discussion of the issues. In the early morning of July 21, 1981, the defendant was a passenger in the front seat of a motor vehicle driven by Regina DiBlasio in Brockton.[1] Lori Newton, who had already been with the defendant and DiBlasio for several hours, was a passenger in the back seat of the motor vehicle. This vehicle passed the victim, Ernest Hill, who was walking in the opposite direction on a sidewalk. DiBlasio said that Hill was the person who had "jumped" her a year or two previously. The defendant said that no one was going to get away with hurting his girl friend and directed DiBlasio to turn the vehicle around. After various intermediate events that are not crucial to the issues on appeal, the vehicle was parked at the curb adjacent to the side door of John's Lounge on Clinton Avenue in Brockton. Hill was in the lounge. DiBlasio was still in the driver's seat, and the defendant was in the front passenger seat, closer to the curb, with a gun in hand and the window open. Hill came out of the lounge and stood with a friend, Melvin Williams, who left after several minutes. The defendant then said to Hill, "Can I talk to you for a minute?" Hill responded affirmatively and walked toward the vehicle. The defendant then shot Hill in the

---

[1] DiBlasio was a codefendant at trial. Her appeal was disposed of adversely to her in an opinion of the Appeals Court issued early last year. *Commonwealth* v. *DiBlasio*, 17 Mass. App. Ct. 1008 (1984).

face, but not fatally. DiBlasio drove the car away. She and the defendant were arrested shortly thereafter. Newton was with DiBlasio and the defendant at the time they were arrested. A police officer told her that, if they found that she was the other woman in the vehicle, there would be a warrant issued for her arrest. About four months later, in November, Newton, who was eighteen years old at the time of the trial, made a recorded statement to an assistant district attorney concerning the activities of the defendant, DiBlasio, and herself before, during, and after the shooting. The defendant had been drinking alcoholic beverages at his apartment before entering the vehicle that night. DiBlasio testified at trial that the defendant was drunk when he entered the vehicle.

1. The judge erred in totally foreclosing the defendant's attempt to cross-examine certain witnesses concerning pending criminal charges in order to show their bias. See *Commonwealth* v. *Connor*, 392 Mass. 838, 841 (1984); *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981); *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 (1981); *Commonwealth* v. *Hogan*, 379 Mass. 190, 191-192 (1979); *Commonwealth* v. *Haywood*, 377 Mass. 755, 760-761 (1979); *Commonwealth* v. *Lewis*, 12 Mass. App. Ct. 562, 572-573 (1981). Cf. *Commonwealth* v. *Ahearn*, 370 Mass. 283, 287 (1976) (pending civilian complaints by defendant against police witnesses); *Davis* v. *Alaska*, 415 U.S. 308, 315-316 (1974) (confrontation clause of the Sixth Amendment). As will be seen, the issue was squarely raised by defense counsel with respect to witnesses who had testified to material facts. See *Commonwealth* v. *Cheek*, 374 Mass. 613, 615 (1978) (issue of bias not properly raised); *Commonwealth* v. *Caine*, 366 Mass. 366, 370 n.4 (1974). This is not a case in which, after cross-examination concerning pending charges, the judge in his discretion appropriately limited further cross-examination. See *Commonwealth* v. *Dougan*, 377 Mass. 303, 310 (1979). Nor, as will also be seen, is this a case in which a voir dire hearing showed that pending charges against a witness arose after the witness had given statements to the police with which his trial testimony was consistent in every material respect. See *Commonwealth* v. *Haywood,*

*supra.* In such a case, a witness's arrest record would not be probative of bias. *Commonwealth* v. *Joyce, supra* at 230. When a possibility of bias exists, however, even if remote, the evidence is for the jury to hear and evaluate. See *Commonwealth* v. *Connor, supra*; *Commonwealth* v. *Hogan, supra* at 191-192. The possibility that a prosecution witness is hoping for favorable treatment on a pending criminal charge is sufficient to justify inquiry concerning bias, even if the Commonwealth has offered no inducements to the witness. We grant that in a particular case a voir dire hearing might show no possibility of bias arising from charges (particularly minor charges) pending against a witness in another county (or jurisdiction). The general rule, however, is to permit cross-examination for bias in favor of the Commonwealth arising from the pendency of charges against a prosecution witness.

One witness for the Commonwealth, Melvin Williams, testified that he saw a motor vehicle parked near the side door of John's Lounge shortly before the time of the shooting. He identified Newton as a passenger in the rear of the vehicle. He further testified that there was a woman, whom he did not identify, sitting in the driver's seat and a man sitting in the front passenger's seat. He saw the motor vehicle and the same occupants at a traffic light near the scene of the shooting shortly after the shooting. He identified the defendant as the man. Williams was a friend of the victim and had talked with him outside the side door of the lounge shortly before the shooting.

In the course of his cross-examination of Williams, defense counsel stated to the judge at the side bar that a complaint charging the witness with rape — a "[c]ase that occurred before this incident" — was pending in the Brockton District Court. Defense counsel sought the judge's permission to impeach Williams on bias, adding, without contradiction from the prosecutor, that "the district attorney's office said they were investigating with the possibility that [the complaint] would be dismissed the next time in court." Counsel contended that Williams was "being very careful with the Commonwealth because he thinks there's a good chance that they will dismiss it." The

judge denied the defendant the right to impeach Williams for bias.

On this record the judge had no discretion to deny the defendant the right to impeach the witness for bias in favor of the Commonwealth. The defendant had the right to inquire into the possible effect on the witness's testimony of a charge of serious crime pending in the same county as that in which the defendant was being tried, particularly where it was represented, and not denied, that the charge was pending at the time of the shooting and the district attorney's office was considering dismissing the charge. However, in considering whether the error was prejudicial, we note that Williams was not an eyewitness to the shooting and his testimony was cumulative. We need not resolve this point because we have no doubt that there was reversible error in denying the defendant the right to cross-examine the witness Newton concerning charges pending against her.

A more crucial witness for the Commonwealth, Lori Newton, the passenger in the back seat of the vehicle from which the shot was fired, also had criminal charges pending against her at the time she testified. Her testimony was particularly relevant because she testified to what was said and done by the defendant and the codefendant DiBlasio before, during, and after the shooting. She was said to be in default since July 3, 1981, on a complaint pending in the Boston Municipal Court charging her as a disorderly person. She was also said to be in default on two complaints pending in the Brockton District Court charging her with "disturbance and affray" on which she had been arraigned in January, 1982.

The judge acted within his discretion in discounting the minor charge pending in Suffolk County because the defendant made no specific representation that the pendency of that charge might have affected Newton's testimony and because the defendant did not request a voir dire hearing concerning that charge. The other charges were pending in Plymouth County, the county in which the trial was being held, but arose after November, 1981, when the witness Newton gave a tape-recorded statement to an assistant district attorney. If Newton's

trial testimony had differed in no material respect from her earlier statement, the judge would have been warranted in his discretion in denying the defendant the opportunity to impeach Newton for bias. *Commonwealth* v. *Haywood*, 377 Mass. 755, 762-763 (1979). The defendant did not ask for a voir dire hearing concerning these pending charges. The prosecutor presented the judge with a copy of the statement Newton made to the assistant district attorney in November, 1981.

Newton's trial testimony was more detrimental to the defendant in certain significant respects than was her November, 1981, statement to the prosecutor. She testified that the defendant twice said in the motor vehicle before the shooting that no one is going to get away with jumping his girl friend, but she made no reference to those comments in her pretrial statement to the assistant district attorney. She further testified that before the shooting the defendant had ordered DiBlasio at gun point to drive the car across the street to a parking lot. Newton made no reference to that statement in her pretrial statement. Newton's testimony concerning the defendant's statements was relevant to the question whether the defendant had an intent to murder the victim. There was also a discrepancy between her earlier statement concerning the distance the victim was from the car when he was shot (four or five feet) and her testimony at one point in the trial (three or four inches). With the victim walking toward the car, it might be argued that, if the defendant did not wait to shoot until the victim was as close as he was going to get, the defendant was only trying to scare the victim and not to kill him.

It is true that defense counsel argued none of these discrepancies to the judge when he sought the right to impeach Newton with evidence of pending charges, nor did he renew the request after the discrepancies were developed in subsequent cross-examination. On the other hand, the rule is that charges pending in the same county may normally be inquired into if the ground of bias is specifically asserted, as it was here. See *Commonwealth* v. *Ahearn*, 370 Mass. 283, 286 (1976). A voir dire showing of consistency between a winess's trial testimony and his statements made before any basis for bias existed may justify

a judge's discretionary denial of the right to impeach for bias (*Commonwealth* v. *Haywood*, *supra* at 762-763), but a showing of inconsistency is not a precondition to the exercise of the right to impeach for bias on the basis of pending charges. Here, the defendant should have been given the right to impeach Newton for bias, and we conclude that the denial of that right was prejudicial error, calling for a new trial.[2]

2. Because there must be a new trial, we comment on an issue pertaining to one of the crimes charged that will arise in retrial, an issue the defendant did not raise below but has argued on appeal.[3] This issue concerns the intent the Commonwealth must prove in demonstrating that a defendant committed an assault with intent to murder. See G. L. c. 265, § 18, under which the defendant was charged ("assaults another with intent to . . . murder," while armed with a dangerous weapon), and G. L. c. 265, § 15 ("assaults another with intent to commit murder"). The judge in effect charged the jury that, if malice aforethought was proved beyond a reasonable doubt, the intent necessary to prove assault with the intent to murder would be established. In other words, the judge's charge required the Commonwealth to prove only malice that would support a conviction of murder in the second degree, if the victim had died from the gunshot wound. The defendant argues, and the Commonwealth concedes in its brief before us, that in addition to malice the crime of assault with intent to murder requires proof of a specific intent to kill. We agree.

---

[2] We need not resolve whether there was error in the judge's refusal to permit cross-examination of the victim concerning criminal charges pending against him. The Appeals Court considered that question in DiBlasio's appeal and rejected it because the victim immediately identified the defendant to the police as the man who shot him and held substantially to the same position through his grand jury and trial testimony. *Commonwealth* v. *DiBlasio*, 17 Mass. App. Ct. 1008, 1010 (1984). In her brief on appeal DiBlasio focused only on a charge of assault and battery by means of a dangerous weapon said to be pending against the victim Hill under another name. There were, however, other charges pending against the victim.

[3] In the circumstances, we need not decide whether there was a substantial risk of a miscarriage of justice (see *Commonwealth* v. *Pickles*, 393 Mass. 775, 776 [1985]) so as to require a new trial on this charge in spite of the failure of the defendant to raise the issue before the trial judge.

Our opinions have not explicitly defined what "intent to murder" means in terms of the defendant's state of mind. We have indicated that the Commonwealth must prove a specific intent to murder. *Salemme* v. *Commonwealth*, 370 Mass. 421, 424 (1976). *Commonwealth* v. *West*, 357 Mass. 245, 250 (1970). We have noted that assault with intent to kill is a lesser included crime within the crime of assault with intent to murder. *Commonwealth* v. *Demboski*, 283 Mass. 315, 322 (1933). See *Commonwealth* v. *Hebert*, 373 Mass. 535, 538 (1977). The difference is that in the lesser crime there need be no proof of malice and thus only such an intention to kill as would amount to voluntary manslaughter if the victim died. *Commonwealth* v. *Hebert, supra* at 538. See *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. 696, 699, 702 (1982). If the lesser crime includes a specific intent to kill, the crime of assault with intent to murder logically also requires a specific intent to kill. There must be both malice, which in this instance means only absence of justification, excuse, and mitigation (see *Commonwealth* v. *McInerney*, 373 Mass. 136, 140-141 [1977]), and the specific intent to kill. Of course, an intent to kill may be inferred from the defendant's conduct. *Commonwealth* v. *Reynolds*, 120 Mass. 190, 197-198 (1876). The general view of the common law crime of assault with intent to murder is consistent with our view that the prosecutor must prove a specific intent to kill. See R. Perkins, Criminal Law 763 (2d ed. 1969);[4] *McArdle* v. *State*, 372 So. 2d 897, 900 (Ala. Crim. App. 1979); *Bell* v. *State*, 501 S.W.2d 137, 138 (Tex. Crim. App. 1973); *State*

---

[4] Professor Perkins discusses the specific intent element of the crime of assault with intent to murder as follows: "Murder may be committed without an actual intent to take life. 'But to constitute the offense of an assault with intent to murder there must be a specific intent to kill.' Hence it is error to instruct the jury that the same facts and circumstances which would make the offense murder, if death had ensued, will furnish sufficient evidence of intention to convict of assault with intent to murder. An intent 'to maim, rob, rape, or other than to kill' will not meet the requirement. Even an assault with an actual intent to kill will be insufficient if the circumstances are such that resulting death would have been manslaughter rather than murder" (footnotes omitted). *Id.*

v. *Fournier*, 448 A.2d 1230, 1233 (R.I. 1982). But see *Finnegan* v. *State*, 33 Md. App. 251, 256 n.1 (1976), cert. denied, 433 U.S. 912 (1977) (suggestion that a specific intent to commit grievous bodily harm may be sufficient).

3. We come finally to an issue that will arise at any retrial of the charge of assault with intent to murder. The defendant requested an instruction that the jury could consider the defendant's intoxication "as bearing on the element of specific intent to murder." The judge did not give such an instruction and instead instructed the jury that voluntary intoxication could not be an excuse or justification for the crimes charged. That is undoubtedly true of the crime of assault and battery by means of a dangerous weapon, because no specific intent is involved in the proof of that crime. We think the rule is otherwise as to the specific intent to kill (but not the malice element) involved in the crime of assault with intent to murder. We have long taken the view that a jury may consider the question whether a defendant charged with murder in the first degree was so overcome by alcohol or some other drug that he was incapable of deliberate premeditation. See *Commonwealth* v. *Costa*, 360 Mass. 177, 186 (1971); *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 617-618 (1949); *Commonwealth* v. *Taylor*, 263 Mass. 356, 362-363 (1928). Cf. *Commonwealth* v. *Perry*, 385 Mass. 639, 648-649 (1982) (instruction on defendant's intoxication as bearing on the charge of murder in the first degree on the ground of extreme atrocity or cruelty); *Commonwealth* v. *Gould*, 380 Mass. 672, 685 (1980) (defendant's peculiar mental state should be considered by jury when extreme atrocity or cruelty is charged). We have said that the rule "is merely an application of the ordinary rules of law pertaining to the requisite mental state for conviction of a particular crime charged." *Commonwealth* v. *Mazza*, 366 Mass. 30, 34 (1974). See *Commonwealth* v. *Gould*, *supra* at 681.

The concept of deliberate premeditation is sufficiently close to the concept of an intent to kill (although they are not identical, see *Commonwealth* v. *Sheehan*, 376 Mass. 765, 776 [1978]), that we cannot logically justify permitting jury consideration of a defendant's alleged intoxication in the former case but

not in the latter. See *Commonwealth* v. *Loretta*, 386 Mass. 794, 799-800 (1982) (There is "more than a soupçon of logic" in the defendant's argument that "voluntary intoxication is as relevant to a defendant's capacity to form a specific criminal intent as it is to a defendant's capacity to premeditate deliberately"). The traditional position of this court that a defendant may not rely on intoxication to warrant a finding of a lack of capacity to commit a "specific intent" crime has been rejected generally elsewhere. See *Commonwealth* v. *Sheehan*, 376 Mass. 765, 774 & n.8 (1978); W.R. LaFave & A.W. Scott, Jr., Criminal Law § 45, at 344 (1972) ("if intoxication does in fact negative an intention which is a required element of the crime . . . the crime has not been committed"); Model Penal Code § 2.08 comment 3 at 7-8 (Tent. Draft No. 9, 1959) ("If the mental state which is the basis of the law's concern does not exist, the reason for its non-existence is quite plainly immaterial"); R. Perkins, Criminal Law, *supra* at 899-900. In recent years we have suggested that our minority position on the effect of the consumption of alcohol and other drugs on a defendant's capacity to have a specific criminal intent might be reconsidered. See *Commonwealth* v. *Loretta*, 386 Mass. 794, 800 (1982); *Commonwealth* v. *Sheehan*, *supra* at 774-775. Our current rule in particular circumstances might permit a defendant to be convicted who, because of intoxication, totally lacked a specific criminal intent, thus raising a constitutional due process issue. An absolute rule that bars consideration of relevant evidence bearing on a defendant's capacity to have a specific intent is, in any event, arbitrary.

It is time to announce that where proof of a crime requires proof of a specific criminal intent and there is evidence tending to show that the defendant was under the influence of alcohol or some other drug at the time of the crime, the judge should instruct the jury, if requested, that they may consider evidence of the defendant's intoxication at the time of the crime in deciding whether the Commonwealth has proved that specific intent beyond a reasonable doubt. If the judge gives such an instruction, he should further instruct the jury that, if they find beyond a reasonable doubt that the defendant had the required

specific intent, the defendant's intoxication, if any, is not an excuse or justification for his actions.

4. The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*


HENNESSEY, C.J. (concurring). I concur in the opinion of the court, but add some views of my own as to the court's statement about a defendant's voluntary use of alcohol or illegal drugs. In several recent cases, this court has moderately broadened the significance of evidence concerning voluntary intoxication. See *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982); *Commonwealth* v. *Mazza,* 366 Mass. 30, 34 (1974); *Commonwealth* v. *Costa,* 360 Mass. 177, 186 (1971). In the instant case, I read the opinion of the court as making the voluntary ingestion of intoxicants relevant to the "specific intent" required for the crime of assault with intent to murder, just as we have made it relevant to the "deliberate premeditation" required for certain cases of murder in the first degree. *Id.* But "specific intent" may not have clear meaning to all judges and all lawyers. I trust that it is clear that the language of the court here has no bearing on the great majority of crimes of violence, such as assault by means of a dangerous weapon and armed robbery. See *Commonwealth* v. *McGrath,* 358 Mass. 314, 320 (1970). It is not in the public interest to conclude that a defendant's voluntary intoxication is relevant to most crimes of violence. We turn our backs on the realities of today's society if we move in that direction. I add that my concerns here do not implicate our decisions relating to insanity, see, e.g., *Commonwealth* v. *Kostka,* 370 Mass. 516, 539-540 (1976) (Hennessey, C.J., dissenting in part), which are based on the sound premise that we should not treat as criminals those persons who are incompetent because of mental disease.