**277 A.2d 739.**

STATE *vs.* DAVID C. MONTEIRO.

MAY 28, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. On February 7, 1967, after the defendant was arrested in the County of Kent, he was charged with unlawful possession of heroin. The defendant was later indicted for such offense by the Kent County Grand Jury, and he subsequently entered a plea of not guilty. After several continuances, the case was heard by a justice of the Superior Court on the defendant's motion to suppress certain evidence prior to the commencement of the trial. After the denial of said motion the case was heard on the merits before a jury and resulted in a. verdict of guilty. The trial justice denied the defendant's motion for a new trial and sentenced the defendant to serve a term of five years at the Adult Correctional Institutions.[1] The case is before us on the defendant's exceptions[2] to the denial of his motion to suppress and to the refusal to allow him to secure new counsel prior to the commencement of the trial.

There is no serious dispute about the essential facts. On the afternoon of February 6, 1967, defendant, a known narcotic addict, was returning from New York by airplane to the "Hillsgrove Airport" in the City of Warwick. On

---

[1]The sentence, which was imposed on June 10, 1968, was stayed pending appeal. However, on December 18, 1970, on the state's motion the court revoked bail and the defendant began serving his sentence.

[2]In accordance with our practice we shall consider only those exceptions which defendant has briefed and argued. *State* v. *Quattrocchi*, 103 R. I. 115, 235 A.2d 99.

the same day Vincent J. O'Connell, a lieutenant in the Detective Division of the Providence Police Department, was at the airport with certain members of his family to bid farewell to one of them. While in the main lobby area Lt. O'Connell saw defendant's girl friend enter the terminal. Lieutenant O'Connell admitted that he was also there waiting for defendant, to see if he would be getting off a plane.

The defendant alighted from a plane and walked through the gate where the lieutenant was standing. They had a conversation during which Lt. O'Connell told defendant he had information that defendant was carrying narcotics. The defendant denied he had narotics on his person, but both of them began walking from the gate to the waiting room. As they walked, the lieutenant told defendant that the C-Squad was waiting to arrest him for carrying narcotics that he had on him and that they had surrounded the airport. When they reached the part of the terminal where the telephones are located Lt. O'Connell told defendant "Wait a minute, I want to make a telephone call." The defendant walked with him to the phone booth and as the lieutenant reached in his pocket to get a coin to use the phone to call the Warwick police, defendant bolted from him, ran out the main door across the sidewalk, and across the road. The lieutenant was chasing him and as defendant got to the other side, he either tripped or slipped, and as he went over the lieutenant fell on top of him.

As they struggled the defendant tried to bury a brown packet in the snow but when he saw that the lieutenant was watching him, he flung it about 20 or 25 feet away. After the lieutenant caught his breath, he advised defendant that he was making a citizen's arrest. As he walked defendant back to the air terminal, he asked the security guard to keep surveillance over the area where the packet was thrown while he put defendant in a special detention

cell at the airport. He then took defendant to the cell where he and one of the security men searched defendant and took his belongings. After locking him up, Lt. O'Connell went out and retrieved the package which defendant had thrown, opened it and saw what appeared to be 84 bags of heroin. The Warwick police were called and, upon their arrival, Lt. O'Connell turned defendant over to them. The defendant was arrested pursuant to a complaint of the deputy chief of police of the City of Warwick. The complaint was issued by a justice of the then District Court of the Fourth Judicial District in the County of Kent.

Lieutenant O'Connell also testified that on the day before the incident at the airport he had been informed by another Providence police officer that defendant would be bringing a large amount of narcotics into the state. He said he was given this information because the other police officer wanted to use some of his detectives for a surveillance of defendant's house.

The defendant based his motion to suppress the pouch and its contents upon the foregoing facts. The trial justice found that there was probable cause for the arrest based upon information received from a reliable informant sufficient to warrant Lt. O'Connell's action of detaining defendant and of making a citizen's arrest. Accordingly, he denied the motion to suppress.

Prior to the commencement of the trial on the merits, defendant requested a continuance in order to retain another lawyer to handle his defense. A motion was also made by defendant's attorney to withdraw as counsel. The trial justice characterized the requests as attempts to delay the trial, and he denied the motions, finding that there was no conflict between defendant and his counsel.

As we have previously stated, the case is before us on

two of defendant's exceptions; one being to the denial of his motion to suppress, and the other to the refusal of his request to secure new counsel.

## I

We shall first consider the motion to suppress. Both the defendant and the state have ably briefed and argued this issue, raising questions involving the legal status of Lt. O'Connell on the date of the arrest, police and citizen's arrest power, unreasonable search and seizure and illegal detention. However, we do not reach these questions, since upon the facts at bar, we conclude that when Lt. O'Connell picked up the leather packet in question, that evidence constituted defendant's abandoned property. As such, defendant had no standing to question the validity of the seizure of the property, or its subsequent appropriation by the police. *Hester* v. *United States,* 265 U. S. 57, 44 S. Ct. 445, 68 L.Ed. 898.

Lieutenant O'Connell testified on the motion to suppress that after he fell over defendant in the snow, defendant flung the pouch containing the narcotic substance 20 or 25 feet. Once defendant was inside the airport detention center, Lt. O'Connell returned outside and retrieved the package. Lieutenant O'Connell's testimony was corroborated by a security guard at the airport who testified that he saw Lt. O'Connell pick up the pouch from the snow.

The act of throwing the pouch 20 or 25 feet into the snow was a voluntary action by defendant. At that point in time Lt. O'Connell had fallen over defendant, and he was attempting to restrain him. No search was taking place. We believe, as did the trial justice, that the pouch belonged to defendant, and that he voluntarily threw it away.

We have carefully considered the many federal and state cases involving abandoned property, and property discard-

ed in open view,[3] and we are satisfied that under the facts at bar, the evidence was properly admitted. Compare Mr. Justice Holmes' opinion in *Hester* v. *United States, supra* at 58, 44 S. Ct. at 446, 68 L.Ed. at 900:

> "It is obvious that * * * the above testimony was not obtained by an illegal search or seizure. The defendant's own acts * * * disclosed the jug, the jar and the bottle—and there was no seizure in the sense of the law when the officers examined the contents * * * after it had been abandoned."

The defendant's exception to the ruling of the trial justice in denying the motion to suppress is hereby overruled.

## II

Under defendant's second exception, he argues that the trial justice violated his constitutional rights by not granting his request for a continuance in order to obtain new counsel. We do not agree.

The defendant's counsel, Howard K. Simmons, appeared at all proceedings representing defendant from the time of his arrest, through District Court proceedings between February and June 1967, at arraignment in the Superior Court on June 30, 1967, during the state's six motions to assign the case for trial between September 1967 and May 1968, and at the hearing on the motion to suppress on May 16, 1968. This active representation of defendant covers a period of over 15 months.

---

[3]See *Rios* v. *United States,* 364 U. S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; *Abel* v. *United States,* 362 U. S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; *Hester* v. *United States, supra; Burton* v. *United States,* 414 F.2d 261 (5th Cir. 1969); *United States* v. *Haden,* 397 F.2d 460 (7th Cir. 1968); *United States* v. *Zimple,* 318 F.2d 676 (7th Cir. 1963); *Keiningham* v. *United States,* 307 F.2d 632 (D. C. Cir. 1962); *Trujillo* v. *United States,* 294 F.2d 583 (10th Cir. 1961); *Lee* v. *United States,* 221 F.2d 29 (D. C. Cir. 1954); *Henderson* v. *Warden,* 237 Md. 519, 206 A.2d 793; *People* v. *Spicer,* 163 Cal. App.2d 678, 329 P.2d 917; *Nava* v. *State,* 170 Tex. Crim. 355, 340 S.W.2d 955; *Commonwealth* v. *Calvarese,* 199 Pa. Super. 319, 185 A.2d 657; *People* v. *Woods,* 26 Ill.2d 557, 188 N.E.2d 1.

However, immediately following the denial of defendant's motion to suppress, the defendant addressed the court:

"As far as this trial is concerned, me and my attorney, I'm going to retain another lawyer. * * * I would like to ask for a continuance."

The trial justice denied the motion, stating:

"The Court finds no conflict between the counsel and the Defendant and denies the motion for a continuance. This is merely another means of attempting to delay this matter, and he [defendant] is entitled to a lawfully speedy trial."

A person charged with a crime is entitled under the sixth amendment to the assistance of counsel for his defense. *Johnson* v. *Zerbst,* 304 U. S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. Where such a person is able to obtain counsel, he must be given a reasonable time and a fair opportunity to secure counsel of his own choice. *Crooker* v. *California,* 357 U. S. 433, 439, 78 S.Ct. 1287, 1291, 2 L.Ed.2d 1448, 1454; *Chandler* v. *Fretag,* 348 U. S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4, 10. However, an accused's right to select his own counsel cannot be manipulated to thwart the orderly process of the due administration of justice, and be used as a tactic to delay trials. *Lee* v. *United States,* 235 F.2d 219 (D. C. Cir. 1956); *United States* v. *Llanes,* 374 F.2d 712, 717 (2nd Cir. 1967); *United States ex rel.* v. *Follette,* 425 F.2d 257 (2nd Cir. 1970). Thus, in order to work a delay by a last minute discharge of counsel, there must exist exceptional circumstances, *United States* v. *Grow,* 394 F.2d 182, 209 (4th Cir. 1968), and a motion for such a continuance is addressed to the sound discretion of the trial justice. *Sam* v. *United States,* 385 F.2d 213, 215 (10th Cir. 1967).

The record before us indicates that defendant was afforded over 15 months to obtain counsel of his choice. At all times during this period defendant was at large on bail,

and there are no facts before us to indicate that defendant was denied the normal facilities and resources to secure counsel of his own choice. We are convinced that defendant's last minute request for the discharge of his lawyer, made at the threshold of jury selection, was a calculated maneuver to avoid trial on the merits. Under the circumstances, the court was well within its discretion in denying the request. Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for delay. *United States* v. *Llanes, supra,* at 717.

Under defendant's claim that he was denied the right of counsel of his choice, defendant also charges that there was inefficiency on the part of his counsel, and that "strained relationships" developed between himself and his counsel. In support of this contention, defendant submits instances of lack of objection and exception to certain hearsay testimony at the trial. We have studied the transcript, and conclude that the defendant had the services of an able, devoted, and resourceful lawyer who protected the defendant's right to a *fundamentally* fair trial. *See, United States ex rel.* v. *Ragen,* 178 F.2d 379 (7th Cir. 1949), *Zimmer* v. *Langlois,* 95 R. I. 446, 188 A.2d 89.

The defendant's exceptions are overruled, and the case is remitted to the Superior Court.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Alton W. Wiley,* for defendant.