David C. **MONTEIRO**

v.

Francis A. **HOWARD, Warden, Adult Correctional Institutions.**

**Civ. A. No. 4681.**

United States District Court,
D. Rhode Island.

Nov. 17, 1971.

---

**412**

Alton W. Wiley, Providence, R. I., for petitioner.

Donald P. Ryan, Asst. Atty. Gen., State of R. I., Providence, R. I., for respondent.

## OPINION

DAY, District Judge.

This is a petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2254. The petitioner is now serving a sentence of five (5) years in the Rhode Island Adult Correctional Institutions at Howard, Rhode Island, and is in the custody of the respondent as the warden thereof. Said sentence was imposed upon him by the Superior Court of the State of Rhode Island on June 10, 1968, following his conviction by a jury of the offense of unlawful possession of heroin, a felony under the laws of Rhode Island. Said sentence was stayed pending appeal. Later while said appeal was pending, the Superior Court, on the motion of the state, revoked said bail on December 18, 1970, and the petitioner then began to serve said sentence. On May 28, 1971, the Supreme Court affirmed his conviction. State v. Monteiro, 277 A.2d 739 (R.I. 1971).

In his petition he alleges that he was illegally arrested in violation of the provisions of the Fourth Amendment to the Constitution of the United States and that the decision of the Supreme Court of Rhode Island, affirming his conviction, failed to afford him his rights as guaranteed by the Constitution of the United States.

In a memorandum filed by his counsel in support of the instant petition he asserts that his Constitutional rights were violated by the rulings of the trial justice of the Superior Court during the trial, viz: denying the petitioner's motion to suppress certain evidence and permitting its introduction during said trial, and denying his request for a continuance of his trial in order to obtain new counsel. Both of these contentions were held by said Supreme Court to be without merit in its affirmance of defendant's conviction. State v. Monteiro, supra.

The transcript of the defendant's trial in said Superior Court, which has been made available to me, shows little dispute as to the essential facts. On February 6, 1967, Lieutenant Vincent J. O'Connell of the detective division of the Providence Police Department was at the "Hillsgrove Airport" in the City of Warwick with certain members of his family to bid farewell to his stepson. While he was in the main lobby of the terminal building he saw the girl friend of the petitioner, a known narcotic addict. This aroused the suspicions of Lieutenant O'Connell because on February 5, 1967, he had received a request

from the Providence Police Department's "C-Squad" to lend it some detectives for a surveillance of Monteiro's home in Providence since it had received reliable information that Monteiro would be returning to Rhode Island within the next few days and would be bringing a large amount of narcotics into this state. As a result of his suspicions Lieutenant O'Connell began a check on the arrival of planes to see if the petitioner would be getting off one of said planes.

A short time later Monteiro alighted from a plane and walked through the gate at said terminal where the lieutenant was standing. Monteiro and the lieutenant exchanged greetings; a brief conversation ensued during which Lieutenant O'Connell told Monteiro he had information that he was carrying narcotics. Monteiro denied he had any narcotics on his person. Both of them then walked together toward the main lobby of said terminal building. As they walked Lieutenant O'Connell told Monteiro that said C–Squad had surrounded the airport and were waiting to arrest him. When they reached the main lobby of said building Lieutenant O'Connell asked Monteiro to wait because he wished to make a telephone call. Monteiro walked with him to the phone booth and as the lieutenant reached in his pocket to get a coin to use the telephone to call the Warwick police, Monteiro ran away from him, out of the main door of said terminal building across the road with Lieutenant O'Connell in pursuit. When Monteiro reached the field on the opposite side of said road, Monteiro slipped or tripped and fell into the snow covering said field and Lieutenant O'Connell fell on top of him.

As they struggled Monteiro attempted to bury a brown pouch in the snow, but when he saw that the lieutenant was observing him he threw it about 20 or 25 feet away. After the lieutenant arose from the ground he advised Monteiro that he was making a citizen's arrest of him for the unlawful possession of narcotics. As he walked him back to the terminal building he asked a security guard at said building to maintain a surveillance of the area where the pouch had been thrown by Monteiro while he placed Monteiro in a special detention cell in said building. After placing him in said cell the lieutenant then returned to the spot where Monteiro had fallen and retrieved said pouch which the latter had thrown away, opened it and saw that it contained what appeared to be 84 bags of heroin. The Warwick police were then called and upon the arrival of certain of them, Lieutenant O'Connell turned Monteiro over to them. He was then arrested pursuant to a complaint issued by a justice in the then District Court of the Fourth Judicial District of the State of Rhode Island.

On May 16, 1968, prior to the commencement of his trial in the Superior Court of the State of Rhode Island, the defendant moved to suppress said pouch and its contents as evidence in his trial on the ground that they had been obtained by the prosecution as the result of an illegal arrest, search and seizure. At the conclusion of the hearing on said motion the trial justice denied said motion on the ground that there was probable cause for said arrest based upon information received from a reliable informant sufficient to warrant Lieutenant O'Connell's action in detaining the defendant and in making a citizen's arrest of him.

Promptly after the denial of said motion the defendant personally requested a continuance of his trial in order to retain another lawyer to handle his defense. His attorney also moved to withdraw as his counsel. Both of these requests were denied by said trial justice who characterized them as attempts to delay said trial. After his trial before a jury which resulted in a verdict of guilty and his sentence, the petitioner prosecuted two exceptions to the Supreme Court of Rhode Island. One of these exceptions was to the denial by the trial justice of his motion to suppress

said evidence, and the other to the denial of his motion for continuance to permit him to engage new counsel prior to his trial. The Supreme Court affirmed the rulings of said trial justice.

In affirming the denial of said motion to suppress, the Supreme Court held that from the evidence presented during said hearing on said motion it was clear that when Lieutenant O'Connell picked up said leather pouch, it constituted the defendant's abandoned property and that as such the defendant had no standing to question the validity of the seizure thereof or its subsequent appropriation by the police. Said Supreme Court found it unnecessary to consider the questions of the legal status of Lieutenant O'Connell on the date of said arrest, police and citizen's arrest power, or unreasonable search and seizure and illegal detention.

In affirming the denial by said trial justice of said request for a continuance in order to permit the defendant to obtain new counsel, the Supreme Court found that said request was a "calculated maneuver to avoid trial on the merits" and that the trial justice was well within his discretion in denying the request in view of the fact that said charge had been pending for fifteen (15) months during which period the defendant was at large on bail, and that there was no evidence that the defendant had been denied the facilities and resources to obtain other counsel if he so desired.

 It is well settled that a defendant has no standing to question the validity of the seizure of property which he has abandoned, or its subsequent appropriation by the police. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). However, it would seem that this rule is not applicable in a case where such abandonment was the result of pressure exerted by an illegal arrest. In United States v. Festa, 192 F.Supp. 160 (D.Mass.1960), the Court said at pages 164–165:

"Finally, the government argues that Pirrello did not hand over Exhibit 5 to the government, but by leaving it on the floor, abandoned the item. This argument ignores the obvious fact that Pirrello abandoned the exhibit solely because he was under unlawful arrest. If the arrest had been justified then it could properly be concluded that, without being put under lawful pressure, Pirrello had abandoned Exhibit 5, had converted its contents into *bona vacantia,* and could not require their return or suppression. Abel v. United States, 362 U.S. 217, at page 241, 80 S.Ct. 683, at page 698, 4 L.Ed.2d 668. But where, as here, the arrest was unlawful, and Pirrello's disposition of Exhibit 5 was a response to that unlawful pressure, Pirrello retained such a possessory right in Exhibit 5 as to be entitled to have it returned to him and suppressed as evidence."

To the same effect, see Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789 (1956).

 Since Lieutenant O'Connell was not a member of the police department of the City of Warwick, he had no authority as a police officer in that city. But there remains the question of whether he had the power to make a citizen's arrest of the petitioner. Since there is no statute in Rhode Island relating to a citizen's arrest, the common law rule would undoubtedly be followed by its courts. In the absence of statutory provision to the contrary, it is well settled that where there is reasonable cause to believe that a felony has been committed and that the arrested person committed it, an arrest by a private citizen is a legal arrest. Moll v. United States, 413 F.2d 1233 (5 Cir. 1969); Jack v. Rhay, 366 F.2d 191 (9 Cir. 1966); United States v. Coplon, 185 F.2d 629 (2 Cir. 1950); Dorsey v. United States, 174 F.2d 899 (5 Cir. 1949); 5 Am.Jur.2d, Arrest, §§ 34–36; 6 C.J.S. Arrest § 8. The evidence adduced during said hearing on the petitioner's motion to sup-

press clearly warranted the finding by said trial justice that Lieutenant O'Connell had reasonable cause to believe that the petitioner was committing a felony in violation of the laws of the State of Rhode Island by having unlawful possession of heroin. The fact that Lieutenant O'Connell, in his official capacity, had received information from a reliable informant that the petitioner would be returning to Rhode Island with narcotics in his possession is no ground for requiring him to ignore information which would justify a lawful arrest by a citizen. This is not a situation where a police officer went outside his jurisdiction with the purpose of making an arrest. On the contrary, it is a situation where a private citizen, although a police officer in another municipality, acting upon reasonable cause to believe that petitioner was committing a felony arrested the petitioner and detained him until the local police could be notified and could place him under arrest. In my opinion a legal citizen's arrest of the petitioner had been made by Lieutenant O'Connell and the petitioner then abandoned said pouch and its contents. Under the circumstances the petitioner had no standing to move to suppress the use of said pouch and its contents as evidence in his trial. Hester v. United States, supra.

In my opinion the second ground urged by petitioner in support of his claim for relief is likewise completely without merit. The transcript of the hearing before said trial justice clearly supports the conclusion of said Supreme Court that said request for a continuance was "a calculated maneuver to avoid a trial on the merits". The transcript of petitioner's trial also shows, as the Supreme Court found, that the petitioner "had the services of an able, devoted and resourceful lawyer who protected the defendant's right to a fundamentally fair trial".

After a careful review of the transcript of the hearing on petitioner's motion to suppress and of his trial, I am completely satisfied that the material facts were adequately developed therein. I am also fully satisfied that the petitioner's rights were fully heard and correctly determined in said proceedings in accordance with federal law. Under the circumstances, the petitioner is not entitled to another plenary hearing in this Court on the same issues. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); McParlin v. Warden of Adult Correctional Institutions, 419 F.2d 7 (1 Cir. 1969).

Accordingly, his petition for a writ of habeas corpus must be and it is denied.